[No. F016676. Fifth Dist. Apr. 16, 1993.]

KEITH CURTIES, Plaintiff and Appellant, v.
HILL TOP DEVELOPERS, INC., Defendant and Respondent.

**COUNSEL**

Klein, Wegis, DeNatale, Hall, Goldner & Muir and Gregory A. Muir for Plaintiff and Appellant.

LeBeau, Thelen, Lampe, McIntosh & Crear and W. Steven Shayer for Defendant and Respondent.

**OPINION**

**DIBIASO, J.—**

### STATEMENT OF THE CASE

Plaintiff Keith Curties appeals from the judgment entered after a jury verdict in favor of defendant Hill Top Developers, Inc., on Curties's complaint for personal injuries. Curties slipped and fell on a sloping lawn on Hill Top's property. Although the jury found that Hill Top was negligent in the management of the property and that its negligence was the legal cause of Curties's injuries, the jury also determined that Curties had assumed the risk of the injuries he suffered. The trial court therefore implemented the complete bar to recovery inherent in the doctrine of implied assumption of risk by entering judgment for Hill Top.

We will conclude that the defense of implied assumption of risk does not apply under the facts of this case and reverse the judgment. (*Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]; *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724].)

### STATEMENT OF FACTS

Hill Top operated the South Real Garden apartments in Bakersfield. Hill Top hired Curties's wife, Janice, to be resident manager and in June 1988, Curties, Janice and their son moved into the apartment complex. On December 27, 1988, about 10:30 a.m., Curties decided to take the trash out to a dumpster located behind their apartment. He was dressed in a shirt, shorts

and rubber-soled sandals or thongs. The morning was quite cold and the grass was dewy or frosty. Curties exited the back door of his apartment and proceeded across a downward sloping lawn to the dumpster, a path he took once or twice a day because it was the most convenient route to the receptacle. As Curties took his first or second step down the slope, he slipped and fell, injuring his right foot, hip and back. He did not return to work for 16 months.

The unfenced lawn area, which was approximately 15 feet by 18 feet, was bounded by the walls of the L-shaped apartment and concrete sidewalks. The grass area near the building was flat but sloped downward toward the sidewalks. The slope descended about 14 to 18 inches over several feet. Tenants, repairmen, vendors and other visitors to the apartment complex utilized the lawn area to approach the back door of the Curties's apartment on a daily basis.

Before his fall, Curties thought the sloping grass area was dangerous. Four months earlier he had lost his balance on the slope, but did not fall. After that he exercised caution while crossing the area.

Within a month of moving into the complex, Janice Curties told Stephen Brown, Hill Top's property manager for the complex, that the grassy area should be addressed because it was unsafe. She had fallen on the grass and several residents told her they also had slipped. She believed steps should be taken because tenants frequently traversed the grass to reach her office, which was located at the back of the apartment.

Stephen Brown testified that Janice had reported the residents' comments. Brown felt the back lawn configuration posed a "mild hazard," and believed it was feasible and appropriate to eliminate the risk posed by the grassy slope.

Nancy Whitehead, who managed the apartment complex between 1986 and 1988, also had reported to Hill Top that people slipped and fell coming up the slope of the lawn behind the apartment.

Jeffrey Rockwell, who was installing carpet at the complex on December 27, 1988, fell coming up the same grassy slope to the Curties's apartment earlier that morning. He testified the grass was covered lightly with frost. He was not hurt by the fall.

DISCUSSION

1. *Implied Assumption of Risk*

Curties contends the court erred by instructing the jury, over his objection, on the principles of reasonable implied assumption of risk.

The law regarding the existence and application of the defense of assumption of risk was unsettled when this case was tried. Notwithstanding the recent decisions in *Knight* v. *Jewett, supra,* 3 Cal.4th 296 and *Ford* v. *Gouin, supra,* 3 Cal.4th 339, it is still muddled. Although in these two cases the Supreme Court held that the doctrine survived the adoption of the comparative fault system of tort liability (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), no single view garnered a majority.

Justice Mosk would abolish the doctrine entirely. The remaining six justices agree the defense is viable in a comparative fault system. However, they split three to three with respect to the analysis to be used to determine whether the defense is applicable in any given situation. Justices George, Lucas and Arabian embrace a duty approach; Justices Kennard, Panelli and Baxter adhere to the traditional consent approach. (*Ford* v. *Gouin, supra,* 3 Cal.4th at p. 351, fn. 1 (conc. opn. of Kennard, J.).)

We find it unnecessary to assess this case under the consent approach because we believe four justices of the Supreme Court would agree the defense does not apply under the facts disclosed by the instant record.

■ The "duty analysis" is based upon a distinction between (1) the situation where the assumption of risk doctrine embodies a legal conclusion that there is no duty on the part of the defendant to protect the plaintiff from a particular risk, known as "primary assumption of risk," and (2) the situation where the defendant owes a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty, known as "secondary assumption of risk." Whether the defendant owes a legal duty to protect the plaintiff from a particular risk of harm depends on the nature of the activity in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity. (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 309.) The existence and scope of the defendant's duty of care is a legal question to be decided by the court rather than the jury. (*Id.* at p. 313.)

According to Justice George's lead opinion in *Knight* v. *Jewett,* which was concurred in by Chief Justice Lucas and Justice Arabian, primary assumption of risk is not merged into the comparative negligence system; secondary assumption of risk is. Thus, in primary assumption of risk cases the plaintiff is barred from recovering anything, whether his conduct in encountering the risk was reasonable or unreasonable. In secondary assumption of risk cases, the defense is merged into the comparative fault scheme and the trier of fact may consider the relative responsibility of the parties. (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 314-315.)

 The instant case falls within the secondary assumption of risk category. Hill Top, as a property owner or manager, was required to use due care to eliminate dangerous conditions on its property in order to avoid exposing tenants such as Curties to unreasonable risks of harm. (Civ. Code § 1714; *Knight* v. *Jewett, supra*, 3 Cal.4th at p. 315; See Harper, et al., The Law of Torts (2d ed. 1986) Assumption of Risk § 21.1, pp. 204-206.) The evidence before the jury supported a conclusion (as the jury in fact found) that Hill Top breached its duty by maintaining the sloping lawn configuration, despite reports that persons had fallen on it. The evidence also supported a conclusion that Curties had proceeded to knowingly encounter the risk created by Hill Top's negligence. Therefore, comparative negligence principles govern the determination of the relative fault of the two parties for Curties's injuries. (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 314-315.)

It is obvious Justice Mosk would support this conclusion, because he believes the doctrine of implied assumption of risk should be entirely eliminated and the principles of comparative fault applied in all cases. (3 Cal.4th at pp. 321-322 (conc. and dis. opn. of Mosk, J.).)

Hill Top contends the judgment must be affirmed, because Hill Top owed no duty to protect Curties from falling on the grassy slope which he chose to traverse regularly, notwithstanding his knowledge that the slope posed the risk of his slipping and falling. In other words, Hill Top argues we should hold that Curties agreed to relieve Hill Top of an obligation of reasonable conduct toward him. This we cannot do. In determining whether assumption of risk applies under the duty approach, our inquiry does not focus upon the reasonableness or unreasonableness of Curties's conduct. Rather, resolution of the issue turns on whether, in light of the nature of the activity in which Hill Top and Curties were involved, Hill Top's conduct breached a legal duty of care to Curties. (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 315.)

Accordingly, the jury was improperly instructed on the defense of assumption of risk, and the judgment in favor of Hill Top must be reversed.

## 2. *Remand*

In his supplemental brief, Curties argues the jury determined he acted reasonably under the circumstances and therefore was without fault, and the case need only be remanded for a determination of damages.

 An appellate court may reverse a judgment in part and order a retrial of a single issue if it is distinct and severable from the remaining issues. But where a limited retrial might be prejudicial to either party, failure to grant a

new trial on all related issues is an abuse of discretion. (*In re Marriage of Martinez* (1984) 156 Cal.App.3d 20, 34 [202 Cal.Rptr. 646]; disapproved on other grounds in *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 451 [224 Cal.Rptr. 333, 715 P.2d 253].)

■ The jury's finding that Curties assumed the risk of injury based on an instruction defining "reasonable" assumption of risk, as the concept may have been understood before *Knight* and *Ford*, cannot be construed on this record as a finding that Curties was wholly without responsibility for his injuries. The jury was instructed on the elements of the defense of reasonable implied assumption of risk and was also told that the "same conduct by plaintiff may constitute both assumption of risk and contributory negligence." The fact the jury was also told that "there are distinctions between these defenses," consisting of the different effects of an affirmative finding on each defense—assumption of the risk results in a complete bar to the plaintiff's action and contributory negligence does not—provides no basis for a conclusion that the jury expressly found Curties's conduct in assuming the risk not to have been negligent. There was a question on the special verdict form which concerned Curties's alleged negligence, but the jury was not required to answer it once it had decided that Curties assumed the risk of his injuries. In these circumstances, we cannot remand only for a determination of damages.

In *O'Kelly* v. *Willig Freight Lines* (1977) 66 Cal.App.3d 578 [136 Cal.Rptr. 171], the trial granted a partial retrial on the issue of apportionment of damages. It found that the jury's apportionment to plaintiff of 50 percent of the liability for damages was not supported by the evidence. The appellate court affirmed and noted that on retrial, the jurors would have to weigh anew the evidence dealing with the conduct of the parties, but could properly be told that the law of the case required them to find each party negligent to some degree. Further, the jurors on retrial would be required to assume the total damages were as specified in the initial trial and their sole function would be to apportion those damages between the parties. (*Id.* at p. 583.)

We find the *O'Kelly* rationale sound and will apply it to the extent feasible here. Accordingly, we will remand with directions to the trial court to conduct a partial retrial on the issues of (1) the degree of Hill Top's negligence, (2) Curties's comparative fault, if any; and (3) damages, if any. The jury shall be instructed that it may weigh the conduct of Curties and Hill Top, but shall also be instructed that the law of the case requires a finding that Hill Top was negligent to some extent, i.e., at least 1 percent.

## Disposition

The judgment is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs on appeal are awarded to appellant.

Best, P. J., and Buckley, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 1, 1993.