**Valeria SPENCER, Plaintiff Below, Appellant,**

v.

**WAL–MART STORES EAST, LP, a Delaware Limited Partnership, Defendant Below, Appellee.**

No. 305, 2006.

Supreme Court of Delaware.

Submitted: May 2, 2007.
Decided: June 18, 2007.
Reargument Denied July 26, 2007.

David R. Scerba, Esquire, of Ramunno, Ramunno & Scerba, P.A., Wilmington, Delaware, for Appellant.

Margaret F. England, Esquire, of Eckert Seamans Cherin & Mellot, LLC, Wilmington, Delaware, for Appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

JACOBS, Justice.

Valeria Spencer ("Spencer"), the plaintiff-below, appeals from a judgment based upon an underlying Superior Court verdict for the defendant, Wal–Mart Stores East, L.P. ("Wal–Mart"), in a slip and fall personal injury case. Spencer claims that the Superior Court erred in three separate respects. We find that Spencer's claims lack merit and affirm.

## FACTS

On January 5, 2003, a snowfall blanketed the area where a Wal–Mart store was located. Four days later, on January 9, 2003, Spencer entered the Wal–Mart parking lot to go to her place of work, which was located inside of the Wal–Mart building.

As a result of the melting snow, a stream of water had developed in the parking lot. Spencer claimed that she slipped on ice that had formed under the stream of water. Michelle Carter, a Wal–Mart assistant manager, responded to Spencer's request for assistance. After investigating, Carter prepared an incident report and took photographs of the area where Spencer fell. There was also a rooftop videotape of the incident, which Wal–Mart preserved.

After her fall, Spencer went to the hospital where she was told to follow up with her primary care physician. By the time of her trial, Spencer's medical expenses had totaled $121,085.04, and her lost wages were claimed to have totaled $20,435.

Spencer filed an action against Wal–Mart, seeking damages for her injuries sustained as a result of her slip and fall at Wal–Mart's parking lot. Spencer claimed that the parking lot had not been properly maintained, and that she was injured as a result of Wal–Mart's negligent maintenance of the parking lot. Spencer also filed a workers' compensation claim against her employer, which was not Wal–Mart but was located inside the Wal–Mart building. At the time of trial, Spencer had received workers' compensation benefits totaling $121,205.62, for which the workers' compensation carrier had a lien.

There were two pretrial conferences. During the first conference, Spencer sought the admission into evidence of the workers' compensation benefits she had received. In response to Wal–Mart's objection, Spencer conceded that she could prove the compensability of her special damages through medical testimony, without having to refer in any way to the workers' compensation lien. The trial judge concluded that the workers' compensation lien should be admitted, nonetheless. At the second conference, there was further discussion about the admissibility of the workers' compensation lien. The trial court reaffirmed its ruling that the jury should be informed of Spencer's workers' compensation benefits.[1]

---

1. [The Court:] Just so that I make the record clear again, I was led to believe that I was also misconstruing who it was who wanted to have the lien into evidence with respect to the workers' compensation lien. Mr. Scerba I thought was trying to get it into evidence because I got a defense motion asking that it be precluded and I looked at the pretrial stipulation again it also had lien there as one of your Exhibits. When I talked on the phone you acted like I was crazy that you did not want it in, but just so I let you know that is where I was coming from it does not change my ruling, though.

[Spencer's counsel:] I am comfortable.
[The Court:] If you look at the pretrial stipulation you proposed it as one of your Exhibits.
[Spencer's counsel:] Very well, Your Honor.
[The Court:] This is what then generated this response motion on the part of the defendants and that was what generated my assumption

At the trial, Spencer called Julius Pereira ("Pereira") as an expert witness on the issue of Wal–Mart's negligence in removing snow from the parking lot. The Superior Court held a *Daubert* hearing before trial on the admissibility of Pereira's proposed testimony. After hearing Pereira's proposed testimony and reviewing his expert report, the trial judge ruled that Pereira was not qualified to testify as an expert under the Delaware Rules of Evidence.[2]

At trial, the Superior Court judge instructed the jury on landowner liability, as follows:

A landowner has a duty to provide a business invitee with safe ingress and egress to its property. Ingress means the entrance or way onto the premises. Egress means the exit or way off the premises. Ordinarily, a landowner does not have a duty to warn an invitee of a danger located off the premises. But if the actual location of the hazard is immediately adjacent to the place of ingress or egress from the premises, the landowner has a duty to warn of the danger or protect against the danger in order to provide its invitees with a safe way onto and off the premises. *If the danger, however, is so apparent that a business invitee can reasonably be expected to notice it and protect against it, the condition itself constitutes adequate warning and the landowner has no further duty to warn or protect the invitee.*[3]

The trial judge also gave the following jury instruction regarding calculation of damages:

You have heard testimony about worker's compensation benefits that Ms. Spencer has received. You should not consider the fact that some of the medical expenses and lost wages she claims in this lawsuit have been paid through workers' compensation because Ms. Spencer has a legal obligation to repay those compensations from any money that you might award in this case. On the other hand, if she does not recover in this case, there is no obligation for her to reimburse. In this case workers' compensation has paid a total of $121,205.65 in benefits to the plaintiff.[4]

At the conclusion of the trial, the jury returned a verdict for Wal–Mart on the issue of liability. Spencer filed this appeal.

---

that you are the one who wanted it in, when you told me on the phone no, no, I did not want it in, I thought I was missing something. [Spencer's counsel:] Can I explain myself just briefly? Initially you are correct, I indicated that on the pretrial conference there was a discussion in general terms, as I recall, as to how that should be handled whether or not it should come in whether it shouldn't. Subsequent to that I did some research. I brought it to Your Honor's attention based on the research that I had done that it had done that it should not come in.
[The Court:] Your research was wrong.
[Spencer's counsel:] I am simply—
[The Court:] The record at the call was no different from what it was—there was nothing in the record in writing that led me to believe other than you wanted to put that in as your Exhibit. That is where the record stands right now. The call of the calendar is not the place to give the Court legal authority for anything.

**2.** *Spencer v. Wal–Mart Stores E., LP*, 2006 WL 1520203, 2006 Del.Super. LEXIS 230, (Del.Super. Ct. June 5, 2006) (holding that Spencer "has failed to demonstrate (1) that [her expert witness] Mr. Pereira has specialized knowledge that would qualify him to testify as an expert; (2) that his opinions are the product of reliable scientific methods and principles; and (3) that his testimony will assist the trier of fact.")

**3.** (Emphasis added). This jury instruction is Delaware Pattern Jury Instruction for Civil Practice 15.2A (2000).

**4.** This jury instruction is Delaware Pattern Jury Instruction for Civil Practice 22.21 (2000).

Three questions are presented, namely, whether the Superior Court erred by: (1) instructing the jury improperly as to Spencer's knowledge of the hazardous condition; (2) informing the jury of Spencer's receipt of workers' compensation; and (3) precluding testimony from Spencer's expert witness. We address these issues in that order.

## ANALYSIS

I. *The "Knowledge of Dangerous Condition" Jury Instruction Claim*

Spencer first contends that the final italicized sentence of the jury instruction regarding her knowledge of the dangerous condition in the parking lot (see p. 884, supra) was erroneous, because it would effectively absolve a landowner of any duty to its business invitees. Relying on *Koutoufaris v. Dick*,[5] Spencer claims that the instruction is incorrect because it conflicts with Delaware's comparative negligence statute.

■ A jury instruction challenged on appeal is subject to *de novo* review.[6] Specifically, we review "a jury instruction challenged on appeal to determine 'whether the instruction correctly stated the law and enabled the jury to perform its duty.' "[7]

*Koutoufaris* does not support Spencer's position. That case involved a claim that landowners were liable for the rape and abduction of their employee, a waitress.

This Court concluded that assumption of risk was not a defense to a claim by the employee, who had knowingly walked into a dangerous parking area after she had completed her work. In *Koutoufaris*, this Court divided assumption of risk into two categories: "primary assumption of risk" (referring to cases where the plaintiff expressly relieves the defendant from all legal duty) and "secondary implied assumption of risk" (a plaintiff's deliberate and unreasonable choice to encounter a risk created by another's breach of duty).[8] In *Koutoufaris*, we concluded that "adoption of a comparative negligence standard ... manifests a legislative intention ... to retreat from a system of inflexible and unforgiving rules in favor of evaluation of the plaintiff's conduct on a case-by-case basis."[9] That is, in Delaware the doctrine of secondary implied assumption of risk was subsumed within a comparative fault analysis. Therefore, the plaintiff was not barred from recovery for knowingly walking into the dangerous parking lot.

■ In *Koutoufaris* we noted, however, that where "the assumption of risk is of the primary type, *i.e.*, a bargained-for, agreed-upon shifting of the risk of harm, a plaintiff's conduct might well constitute a complete bar to recovery, as a matter of law, even in a comparative negligence jurisdiction."[10] This Court further observed that although Delaware has adopted a modified comparative negligence standard,

5. *604 A.2d 390, 398 (Del.1992) (holding that "if the plaintiff was aware of the danger, no liability arises on the part of the landowner even though on a comparative basis the plaintiff's error in judgment in not appreciating the risk might be far less blameworthy than defendant's conduct in creating the risk or failing to eliminate it. Such a result is clearly at variance with the legislative intent that, where negligence is reflected in the conduct of both parties, liability, and consequent recovery, be determined proportionately.").*

6. *Chrysler Corp. v. Chaplake Holdings, Ltd., 822 A.2d 1024, 1034 (Del.2003).*

7. *Id. citing Russell v. K–Mart Corp., 761 A.2d 1, 4 (Del.2000).*

8. *Koutoufaris, 604 A.2d at 397, citing Bib v. Merlonghi, 252 A.2d 548, 550 (Del.1969).*

9. *Koutoufaris, 604 A.2d at 398.*

10. *Id. citing Swagger v. City of Crystal, 379 N.W.2d 183 (Minn.Ct.App.1985).*

"[a]ssumption of the risk, to a level greater than a defendant's primary negligence, may constitute proximate cause sufficient to bar recovery." [11] But ordinarily, "[s]econdary assumption of risk is a basis for apportionment of fault under the comparative negligence scheme." [12]

■ In this case, Spencer did not expressly relieve Wal–Mart or any other party to the law suit of all legal duty. That is, there was no primary assumption of risk. The issue is whether Spencer secondarily assumed the risk. Spencer had worked at the Wal–Mart location for several years, and was familiar with the parking lot. On the day of her accident, she chose not to walk on the sidewalk and instead walked through a stream of water that had developed as a result of the melting snow. Thus, Spencer assumed the risk of proceeding through the water, which constituted a "secondary assumption of risk" category. Because secondary assumption of risk is generally a question of fact to be determined by the jury,[13] "its degree remains a jury question." [14]

■ In Delaware, "[j]ury instructions may not be viewed in isolated portions, but must be read in their entirety to determine whether they accurately state the substance of the law." [15] Here, the challenged jury instruction was not inconsistent with our system of comparative negligence.[16] Although the instruction allowed for the landowner's duty to be satisfied if a warning is given, the jury must still consider the degree of Spencer's secondary assumption of risk in determining her comparative fault. Therefore, the jury instruction was consistent with the comparative negligence statute and it properly explained the principles that were crucial to the jury's deliberations.

## II. The Workers' Compensation Benefits Disclosure Claim

■ Spencer next claims that the Superior Court reversibly erred by informing the jury that she had received workers' compensation benefits. Spencer argues that because the collateral source rule would have prohibited the admission of evidence of her receipt of workers' compensation benefits, the Superior Court abused its discretion in informing the jury that a workers' compensation lien existed and disclosing the amount of the lien.

■ A trial judge's decision to admit or exclude evidence is reviewed for abuse of discretion.[17] Judicial discretion "is the exercise of judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of the circumstances and has not so ig-

11. *Koutoufaris*, 604 A.2d at 398 n. 6. This Court has held that "[i]f the plaintiff knows of the existence of risk, appreciates the danger of it and nevertheless does not avoid it, he will be held to have assumed the risk and may not recover for his injuries." *Yankanwich v. Wharton*, 460 A.2d 1326, 1330 (Del.1983), quoting *Robinson v. Meding*, 163 A.2d 272, 276 (Del.1960).

12. *Halpern v. Wheeldon*, 890 P.2d 562, 565 (Wyo.1995), citing *Brittain v. Booth*, 601 P.2d 532, 534 (Wyo.1979).

13. *Curties v. Hill Top Developers, Inc.*, 14 Cal. App.4th 1651, 1656, 18 Cal.Rptr.2d 445 (Cal. Ct.App.1993).

14. *Patton v. Simone*, 626 A.2d 844, 853 (Del.Super.Ct.1992).

15. *Shum v. Minor*, 1993 WL 385108, at *2, 1993 Del. LEXIS 366, at *4 (Del. Sept. 22, 1993), citing *Chavin v. Cope*, 243 A.2d 694, 698 (Del.1968).

16. *Compare, Culver v. Bennett*, 588 A.2d 1094, 1099 (Del.1991).

17. *Brown v. Liberty Mut. Ins. Co.*, 774 A.2d 232, 237–38 (Del.2001).

nored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused."[18] To find an abuse of discretion, there must be a showing that the trial court acted in an arbitrary and capricious manner.[19]

■ In *Yarrington v. Thornburg,*[20] this Court articulated the collateral source rule thusly: "a tortfeasor has no right to any mitigation of damages because of payments or compensation received by the injured person from an independent source."[21] The collateral source rule "is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant."[22]

The collateral source rule is inapplicable here. In *Bounds v. Delmarva Power & Light Co.,*[23] we upheld the same jury instruction as was given in this case:

> You have heard testimony about the workers' compensation benefits that Craig Bounds has received. You should not consider the fact that some of the medical expenses and lost wages that he claims in this lawsuit have been paid through workers' compensation because Craig Bounds has a legal obligation to repay this compensation from any money that you might award in this case. On the other hand, if he does not recover in this case, there is no obligation for Craig Bounds to reimburse.

The workers' compensation instruction given here is a pattern civil instruction that, together with the instruction on damages, is designed to inform the jury that if it finds for the plaintiff, it should award the full amount of lost wages and medical expenses that it finds to exist by a preponderance of the evidence, without deducting any amount paid by workers' compensation. The instruction is also intended to dispel any jury concerns about possible double recovery by the plaintiff of medical bills or lost wages.

In this case, there was a significant risk that evidence that Spencer had received workers compensation could mislead the jury to conclude that Spencer was seeking a double recovery. To prevent any such misconception, the trial court properly exercised its discretion in advising the jury how to determine the damages.[24]

Nor was Spencer prejudiced by that instruction, which was given for the jury to consider in determining the amount of damages. The jury never reached the damages issue, because the jury found no liability on the part of Wal–Mart. Because no prejudice resulted to Spencer from the instruction, there is no basis to find that the Superior Court abused its discretion.

### III. *The Daubert Claim*

Finally, Spencer contends that the trial court abused its discretion by excluding the testimony of her proposed expert witness, Pereira.[25] Spencer argues that Per-

---

**18.** *Firestone Tire & Rubber Co. v. Adams,* 541 A.2d 567, 570 (Del.1988).

**19.** *Chavin v. Cope,* 243 A.2d 694, 695 (Del. 1968).

**20.** 205 A.2d 1 (Del.1964).

**21.** *Id.* at 2.

**22.** *Id.*

**23.** 2004 WL 343982, 2004 Del.Super. LEXIS 39 (Del.Super.Ct. Jan. 29, 2004), *aff'd* 2004

WL 2850090, 2004 Del. LEXIS 555 (Del. Dec. 2, 2004).

**24.** At the pretrial conference, the trial judge stated: "[The jury] may have to be told in order to understand where the money is, where it is to where it came from. One thing they shouldn't be misled either way, this is not a game, win at all costs. Get them the truth so they can decide what is fair."

**25.** The Superior Court, after a pretrial hearing, held that Pereira's testimony should be excluded because (1) his qualifications as an

eira was qualified to testify about whether Wal–Mart had properly maintained its parking lot, that Pereira's opinions were based upon reliable principles and methods, and that his testimony would have assisted the jury in understanding the evidence or determining a fact.

▮ A trial court's decision to admit or exclude expert testimony is reviewed for abuse of discretion.[26] "This deferential standard of review merely recognizes that trial judges perform an important gatekeeping function and, thus, 'must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.' "[27] Further, "[w]hen an act of judicial discretion is under review, the reviewing court may not substitute its own notions of what is right for those of the trial judge, if his judgment was based upon conscience and reason, as opposed to capriciousness or arbitrariness."[28]

▮ The admissibility of expert testimony is governed by Delaware Rule of Evidence 702.[29] In *Goodridge v. Hyster Co.*,[30] this Court articulated a five-step test to determine whether expert testimony is admissible under that Rule. Specifically, the trial judge must find:

(1) the witness to be a qualified expert; (2) the testimony to be relevant and reliable; (3) the testimony to be based upon information reasonably relied upon by experts; (4) the testimony will assist the trier of fact; and (5) the testimony will not create unfair prejudice or confuse or mislead the jury.[31]

▮ Spencer first argues that Pereira had sufficient education, experience and training to opine on snow and ice control. Pereira's curriculum vitae, however, reveals that Pereira did not possess the experience necessary to qualify him as expert in that field. Pereira was trained as an architect. Except for a two-day course addressing snow and ice abatement procedures, Pereira's other formal education and professional seminars included no training related to snow and ice removal. Pereira was then currently employed as a forensic architect for the consulting firms Robson Forensic and Fornier Ross and Associates. Before that time, Pereira was employed as an architect or consultant for various architectural firms and real estate developers. Pereira was not a member of

architect did not qualify him to testify in the areas of maintenance and snow removal; (2) his expert "opinion" was formed by pulling phrases and sentences from various snow plowing and safety publications; and (3) the jury would not be assisted by Pereira's testimony as it consisted primarily of a restatement of the legal standard of care. *See Spencer v. Wal–Mart Stores E., LP*, 2006 WL 1520203, at *2, 2006 Del.Super. LEXIS 230, at *5–7 (Del.Super. Ct. June 5, 2006).

**26.** *Goodridge v. Hyster Co.*, 845 A.2d 498, 503 (Del.2004).

**27.** *Bowen v. E.I. duPont de Nemours & Co., Inc.*, 906 A.2d 787, 795 (Del.2006), *quoting Garden v. State*, 815 A.2d 327, 338 (Del.2003).

**28.** *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n*, 902 A.2d 1084, 1089 (Del.

2006), *quoting Chavin v. Cope*, 243 A.2d 694, 695 (Del.1968).

**29.** Delaware Rule of Evidence 702 provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." D.R.E. 702 (2001).

**30.** 845 A.2d 498 (Del.2004).

**31.** *Id.* at 503.

any professional organizations in the field of snow and ice removal, and his experience in relation to snow removal was limited to helping his father, who operated a snow plowing company, when he was a teenager. Consequently, the trial court did not err in finding Pereira not qualified as an expert on ice and snow removal.

■ Second, Spencer contends that Pereira's report should have been admitted because his opinions were based upon reliable principles and methods. As noted above, "trial courts have a gatekeeping obligation to ensure that all expert testimony is reliable and relevant."[32] In *Daubert v. Merrell Dow Pharmaceuticals*,[33] the United States Supreme Court established the following non-exclusive list of factors in assessing expert testimony under Federal Rule of Evidence 702:(1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the technique is generally accepted.[34]

In *Goodridge v. Hyster Co.*,[35] this Court held that taking phrases from various trade journals and piecing them together to develop an opinion is not a satisfactory basis or technique to be used to form an expert opinion in the Delaware courts.[36] After reviewing Pereira's report, the Superior Court found that the majority of Pereira's opinion was "based simply on his culling potentially favorable snippets from various snow plowing and safety publications, instead of an opinion based on the application of facts to a scientific theory, or adequate experience and special training."[37] That finding is solidly grounded in the record. Pereira failed to perform a sound analysis of the facts and theories, and to show how he reached his conclusions from his observations. The Superior Court did not abuse its discretion by excluding the testimony of Spencer's expert witness.

Lastly, Spencer contends that Pereira's testimony would have helped educate the jury that Wal–Mart's efforts to clear snow and ice from the parking lot fell below the standard of care owed to the invitee in light of relevant industry standards. We find that argument unpersuasive, because Pereira's proffered opinion did not provide any additional understanding of the issues of fact confronting the jury. Rather, most of Pereira's opinions consisted of quotations pulled from building codes. These quotations essentially provided a code based duty of care for landowners,[38] which was embodied in the jury instructions given by the Superior Court. It is for the jury, not the expert witness, to determine

---

32. *White v. United States*, 422 F.Supp.2d 1089, 1093 (D.Ariz., 2006).

33. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

34. *Id.* at 593–94, 113 S.Ct. 2786.

35. 2002 WL 32007200 (Del.Super.Ct. Oct. 4, 2002).

36. *Id.* at * 1.

37. *Spencer*, 2006 WL 1520203 at *2, 2006 Del.Super. LEXIS 230 at *6.

38. For example, Pereira cites the International Property Maintenance Code, which states that "[a]ll sidewalks, walkways ... and similar paved areas shall be kept in a proper state of repair ... and maintained free of hazardous conditions." In addition, Pereira cited three snow removal and ice control industry references such as *The Snowplowing Handbook, Managing Snow & Ice and Snow Business, A Contractor's Guide to Profitable Snow Removal* solely to "identify proper operational procedures."

whether Wal–Mart met the appropriate standard of care in maintaining its parking lot. In the form as proffered, Pereira's opinion would have usurped the trial court's function to instruct the jury on the law. Pereira's expert opinions were more common sense than formulated opinions. As the Superior Court pointed out, "expert testimony is [not] required to argue to a jury that a pile of snow in a parking lot is going to melt."[39] The trial judge properly exercised her discretion in excluding Pereira's testimony.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

39. *Spencer,* 2006 WL 1520203 at *2, 2006 Del.Super. LEXIS 230 at *7.