IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DAELA M. ROBERTS[1], | § | |
| | § | No. 305, 2019 |
| Respondent Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below – Family Court |
| | § | of the State of Delaware |
| JARRETT BLOCKER, | § | |
| | § | File No. CN07-03783 |
| Petitioner Below, | § | Petition No. 17-06091 |
| Appellee. | § | |
| | § | |
| | § | |

Submitted: July 10, 2020
Decided: September 29, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR** and **MONTGOMERY-REEVES**, Justices.

## ORDER

After consideration of the parties' briefs, the joint motion to strike, and the record on appeal, it appears to the Court that:

(1)    The appellant, Daela M. Roberts ("the Mother"), filed this appeal from a Family Court order, dated June 28, 2019, that granted the petition to modify custody filed by the appellee Jarrett Blocker ("the Father").   We find no error or

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

(2) The Mother and the Father are the parents of a son born in 2006 ("the Child"). Beginning in 2007, the parties litigated custody, petitions for protection from abuse ("PFA"), and rules to show cause. In 2008, the Family Court granted joint custody of the Child to the parents and primary residence of the Child to the Mother. Disputes between the parents concerning the Father's visitation led to additional petitions and hearings. In 2011, the Family Court restricted the Father's contact with the Child to supervised visitation at the visitation center based on delusional comments that the Father had made and his failure to obtain a psychological evaluation.

(3) In 2013, the Father filed a petition for a rule to show cause, alleging that the Mother refused to bring the Child to the visitation center. In response, the Family Court continued joint custody and the Father's supervised visitation, but it eliminated his phone contact with the Child. The court also granted the Mother final decision-making authority in the areas of medical care and counseling. Thereafter, the Father had little contact with the Child, but he did not file any additional petitions.

(4) On February 20, 2017, the Department of Services for Children, Youth and their Families ("DSCYF") filed a petition for *ex parte* custody of the Child.

2

DSCYF alleged that the Mother was mentally and medically abusing the Child and that the Father was not involved in the Child's life. The Family Court awarded temporary custody of the Child to DSCYF. On February 21, 2017, DSCYF filed a dependency/neglect petition for custody of the Child.

(5)     The Father filed an answer to DSCYF's petition, denying that the Child would be dependent in his care. The Father also filed a petition to modify custody, alleging the Child had experienced abuse in the Mother's care, averring that it was no longer in the Child's best interest for the parents to have joint custody, and seeking primary residence of the Child. In her answer to the Father's petition, the Mother sought sole custody and primary residence of the Child.

(6)     In the DSCYF proceeding, the Family Court appointed an attorney to represent the Mother and an attorney to represent the Child. At the preliminary protective hearing, the Mother stipulated to probable cause for dependency of the Child based on her inability to handle his mental health needs and her fear of him. The Father also stipulated to dependency because he had not had contact with the Child in several years. DSCYF planned to explore placement of the Child with the Father. At a May 26, 2017 adjudicatory hearing, the parties agreed to dismiss the DSCYF petition and enter an interim stipulation ("Interim Stipulation") regarding custody.

(7) Under the Interim Stipulation, the parents had joint custody, but the Father had final decision-making authority in the event of a disagreement. The Father had primary residence of the Child. The Mother had supervised visitation at one of two visitation centers. The Mother and the Child were to participate in individual counseling. They were also to participate in family counseling once the Mother's counselor, the Child's counselor, and the family counselor agreed that family counseling was appropriate. As part of her individual counseling, the Mother was supposed to follow the recommendations of a social worker who performed a caregiver child assessment as well as any recommendations of the psychologist who was scheduled to evaluate her on June 1, 2017. The Mother was not to give the Child medicine or gifts or have any contact with him outside of the supervised visitation. The Father was responsible for making the Child's medical appointments and informing the Mother of the appointments.

(8) A hearing on the Father's custody petition was originally scheduled for September 2017, but it was continued several times so that the Mother's pending criminal charges for endangering the welfare of a child and third-degree child abuse could be resolved.[2] The Family Court held a two-day hearing on the custody petition

---

[2] The Mother was also charged with five counts of criminal contempt based on her violation of the no-contact order. In December 2018, the Mother pleaded guilty to two counts of criminal contempt.

4

(as well as several rules to show cause filed by the parents) on March 25 and March 26, 2019. At the time of the hearing, the Mother had been found guilty of the charges in Family Court. She later filed a *de novo* appeal to the Superior Court.

(9) Both parents and the Child were represented by counsel at the custody hearing.[3] During the hearing, the Family Court heard testimony from the parents, the psychologist who performed psychological evaluations of the Father and the Mother, the family counselor, the Child's counselor, and the Child's half-sister. The psychologist diagnosed the Mother, who is a registered nurse, with Factitious Disorder Imposed on Another.[4] The Family Court interviewed the Child on April 19, 2019.

(10) On June 19, 2019, the Family Court issued an order that granted the Father's petition to modify custody. The Family Court held that modification of the previous custody order would not harm the Child and that the best-interests factors weighed in favor of the Father having sole custody and primary residence of the

---

[3] The attorney *ad litem* appointed to represent the Child in the DSCYF proceeding also represented him in the custody proceeding. The Mother retained the attorney who was appointed to represent her in DSCYF proceeding to represent her in the custody proceeding. In August 2018, the Family Court granted the attorney's motion to withdraw. The Mother represented herself until she retained another attorney to represent her at the custody hearing. After the custody hearing, the Family Court granted the attorney's motion to withdraw based on the Mother's request that he withdraw.

[4] This condition is also known as Munchausen syndrome by proxy. A person with this disorder "falsely claims that another person has physical or psychological signs or symptoms of illness, or causes injury or disease in another person with the intention of deceiving others." Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/factitious-disorder/symptoms-causes/syc-20356028.

Child. The Family Court also concluded that the Mother should not have any contact with the Child at the present time because such contact would endanger the Child's physical health or significantly impair his emotional development. The Family Court ordered that the Mother could file a petition to modify visitation when she had a therapist who would testify that the Mother was treated for the psychologist's diagnosis, accepted responsibility for her actions, and was willing to apologize to the Child.

(11) The Mother filed a motion for reargument, arguing that the restrictions imposed on her ability to file a petition for modification of visitation were improper. The Family Court granted the motion and issued an amended order eliminating the restrictions. This appeal followed.

(12) After the Mother filed her opening brief, the Father and the Child's attorney filed a joint motion to strike portions of the Mother's opening brief and exhibits to the opening brief that were not part of the record below. The Mother did not respond to the motion. Consideration of the motion was deferred pending consideration of the merits of this appeal. On appeal, we have not considered the documents that the Mother attached to her opening brief that were not part of the record below or handwritten comments, marks, or alterations on documents that the

6

Mother made on documents that were part of the record below.[5] We have considered documents from other Family Court proceedings involving the parties that the Family Court considered and referenced in the custody order on appeal.

(13) This Court's review of a Family Court decision includes a review of both the law and the facts.[6] Conclusions of law are reviewed *de novo*.[7] Factual findings will not be disturbed on appeal unless they are clearly erroneous and justice requires they be overturned on appeal.[8] When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for that of the trier of fact.[9]

(14) The Mother's arguments on appeal may be summarized as follows: (i) the custody petition should not have been resolved until her criminal charges were finally resolved; (ii) it was unfair for the Child's attorney from the DSCYF proceeding to represent the Child in the custody proceeding; (iii) the evidence did not support the Family Court's findings concerning her mental health, the Father's mental health, and the Child's emotional and physical health; (iv) the Family Court

---

[5] We note that a number of the excluded documents are duplicative of the Mother's testimony during the custody hearing.
[6] *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006).
[7] *Id.*
[8] *Id.*
[9] *Wife (J.F.V.) v. Husband (O.W.V, Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

ignored how the Father and others alienated the Child from her; and (v) her human and parental rights to contact with the Child were violated.

(15) The Mother argues that the custody petition should not have been resolved until after her criminal charges were finally resolved. The record reflects that the custody hearing, originally scheduled for September 2017, was continued several times so that the Mother could resolve her criminal charges. At the last case management conference in December 2018, the Family Court scheduled the matter for a hearing in March over the Mother's objections that her criminal charges were still pending (because she had appealed a commissioner's finding of guilt) and that she needed to hire an attorney for the custody proceeding. The Family Court concluded that the custody petition, which had been pending for almost two years, could no longer be delayed. The Family Court also informed the Mother that the attorney she retained could file a timely motion for a continuance of the March hearing. The attorney retained by the Mother for the custody hearing did not file a motion for a continuance.

(16) Even if the Mother's failure to seek a continuance of the March hearing dates did not constitute a waiver of this issue, she has not shown that the Family Court erred in resolving the custody petition before final resolution of the criminal charges. The transcript of the custody hearing reflects that the Mother was advised of her Fifth Amendment rights, received the advice of her attorney, and chose to

8

testify fully. To the extent the Mother believes that the ultimate resolution of those charges would have led to a different result in the custody proceeding,[10] she ignores that the Family Court judge recognized the convictions were on appeal and did not consider them as part of her best-interest analysis. The Mother also did not seek to have the Family Court consider how those charges were finally resolved in the first instance.[11] The Family Court did not err in resolving the custody petition before final resolution of the Mother's criminal charges.

(17) The Mother also challenges the role of the Child's attorney in the custody proceeding. The Family Court originally appointed the attorney to represent the Child in the DSCYF proceeding and later appointed him to represent the Child in the custody proceeding. The Family Court may, in the interest of the child, appoint an attorney to represent a child in custody proceedings.[12] Under the circumstances here, which included the removal of the Child from the Mother's care

---

[10] We take judicial notice that a Superior Court jury found the Mother not guilty of third-degree child abuse and could not reach a verdict on the child endangering charge. The State filed a *nolle prosequi* for the child endangering charge.

[11] *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court."); *Ponce v. Potter*, 2013 WL 842520, at *1 (Del. Mar. 5, 2013) (refusing to consider the appellant's reasons for missing a hearing that were not presented in the trial court and noting that the appellant could raise those reasons in a motion to reopen the trial court judgment).

[12] 13 *Del. C.* § 721(c). *See also* 10 *Del. C.* § 925(14) (providing that Family Court has the power to appoint guardians *ad litem*).

9

and the Child's lack of contact with the Father before his removal, appointment of the attorney to represent the Child in the custody proceeding was not error.

(18) The Mother's attacks on the performance of the Child's attorney are also without merit. The record reflects that the Child's attorney took his representation of the Child seriously and zealously represented the Child's interests. The fact that the Child's attorney did not share the Mother's view of the Child's best interests or the evidence does not mean he was biased against the Mother and is not a basis for reversal of the custody order. The duty of the Child's attorney was to represent the Child's interests, not the Mother's.

(19) The Mother next argues that the evidence did not support the Family Court's rulings. In addressing this argument, we first briefly review the legal standards and the Family Court's analysis. A petition for modification of custody or primary residence filed more than two years after a previous order that was entered after a hearing on the merits is governed by 13 *Del. C.* § 729(c)(2). Under Section 729(c)(2), the Family Court considers the following criteria: (i) whether modification of the previous order is likely to cause the child any harm and, if so, whether the advantages to the child likely outweigh that harm; (ii) the compliance of each parent with previous orders concerning visitation, custody, and their duties and responsibilities under Section 727; and (iii) the best-interests factors are set forth

in 13 *Del. C.* § 722.[13] The Family Court determines visitation "consistent with the child's best interests and maturity, which is designed to permit and encourage the child to have frequent and meaningful contact with both parents unless the Court finds, after a hearing, that contact of the child with 1 parent would endanger the child's physical health or significantly impair his or her emotional development."[14]

(20) In considering Section 729(c)(2)(a)—the likelihood of harm to a child if a previous custody order is modified—the Family Court concluded that the Child would not be harmed if the previous custody order was modified. As to Section 729(c)(2)(b)—the compliance of each parent with previous court orders and their responsibilities under Section 727(b)—the Family Court judge noted that she was issuing orders denying two rule to show cause petitions filed by the Mother,[15] that she was issuing an order finding the Mother in contempt of the Interim Stipulation,[16] and that the Mother had pleaded guilty to two counts of criminal contempt for violating a no-contact order.

---

[13] The Section 722 factors include: (i) the wishes of the parents; (ii) the wishes of the child; (iii) the interaction of the child with his parents, relatives and any other residents of the household; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance of the parents with their rights and responsibilities to their child; (vii) evidence of domestic violence; and (viii) the criminal history of any party or resident of the household.

[14] 13 *Del. C.* § 728(a).

[15] The Mother did not appeal these orders.

[16] The Mother did not appeal this order.

(21) Applying the best-interests factors under Section 722, the Family Court held that factors 5 (the mental and physical health of individuals involved), 6 (the parents' past and present compliance with their rights and responsibilities to the child under Section 701), and 8 (the criminal history of the parties) supported the Father having sole custody of the Child. The Family Court found that factors 1 (the wishes of the parents), 2 (the wishes of the child), 3 (the relationship of the child with his parents and relatives), 4 (the child's adjustment to his home, school, and community) and 7 (evidence of domestic violence) were neutral as to custody. With the exception of factor 1, the Family Court found that all of the best-interests factors supported the Father having primary residence of the Child. The Family Court found that all of the best-interests factors, except for factors 1 and 4, supported restriction of the Mother's contact with the Child.

(22) The Mother's arguments center on the Family Court's findings concerning her mental health, the Father's mental health, and the Child's emotional and mental health. As to her mental health, the Mother argues that the Family Court should not have accepted the psychologist's opinion that she suffers from Factitious Disorder Imposed on Another because the psychologist relied on inaccurate information and misunderstood or failed to verify the medical records he reviewed

12

for his report. We review the Family Court's decision to admit or exclude expert testimony for abuse of discretion.[17]

(23) At the custody hearing, the Mother's counsel stipulated that the psychologist had the expertise to perform a psychological evaluation of the Mother and to admission of the psychologist's report subject to cross-examination. At the conclusion of his cross-examination, the Mother's attorney acknowledged that the psychologist had addressed all of the factors outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[18] but the attorney stated that the Mother objected to the diagnosis of Factitious Disorder Imposed on Another. The Mother continues to challenge how the psychologist reached his diagnosis, but she has not shown that his methodology fails to satisfy the criteria for reliability under *Daubert*. The Family Court did not err in accepting the psychologist's opinion.

(24) As to the Father's mental health, the Mother argues that the Family Court ignored the Father's history of mental health issues. She is incorrect. The Family Court recognized that the Father was on long-term disability for anxiety and that a 2011 custody order referred to him making delusional statements and failing to obtain a psychological evaluation. As the Family Court also recognized, the psychologist who evaluated the Father's mental health in 2017 (the same

---

[17] *Spencer v. Wal-Mart Stores East, LP*, 930 A.2d 881, 888 (Del. 2007).
[18] 509 U.S. 579 (1993).

psychologist who evaluated the Mother) opined that the Father did not meet any criteria for a mental health diagnosis. The psychologist also considered above average anger levels identified in a previous mental health evaluation of the Father in 2010 and opined that the Father did not currently have anger management problems that would compromise his ability to care for the Child.

(25) As to the Child's mental and physical health, the record supports the Family Court's findings that the Child was doing better in the Father's care than in the Mother's care. The Mother argues that the Child is currently overweight and doing poorly in school, but she ignores all of the conditions he supposedly suffered from while in her care that led to multiple medications and frequent trips to medical and behavioral facilities. Those past medical issues have not arisen while the Child has been in the Father's care. The Mother also ignores the Father's plan to address the Child's weight gain and performance in school. The Mother contends that the Child is suffering emotional pain, but his counselor testified that he was doing much better since when she began seeing him after he was removed from the Mother's care. Having carefully reviewed the parties' arguments and the record, we conclude that that the Family Court did not err in concluding that factor 5—the mental and physical health of individuals involved—weighed in favor of granting the Father sole custody and primary residence of the Child.

(26) The Mother also argues that that the Child was alienated from her. We disagree with the Father and Child attorney's position that this argument was not raised below. Although the Mother may not have used the term "alienation" in the custody proceeding, she testified that other people, primarily the Father, caused the Child to view her negatively and refuse to see her at the visitation center.

(27) In the custody order, the Family Court judge reviewed both the Mother's testimony that she had a good relationship with the Child as well as the Child's statements to the judge that he did not want to see the Mother. The Child's negative views of the Mother were primarily based on his personal experiences with her while he lived with her. Among other things, he told the Family Court judge that the Mother threw things at him, hit him, threatened him, and convinced doctors to put him on numerous medications that he did not take after he was removed from her custody. There is no sign in the record that the Child's negative feelings about the Mother were caused by the Father or others; rather, they appear to be based on his own personal experiences with the Mother.

(28) Finally, the Mother argues that the custody order violates her human and parental rights to have some contact with the Child. After reviewing the evidence and applying the best-interests factors, the Family Court concluded that the Child should not presently have contact with the Mother under the custody order because it would impair his physical health or significantly impair his emotional

15

health.  In reaching this conclusion, the Family Court emphasized the negative effect of the Mother's mental health issues on the Child and her failure to accept or treat those issues.  We are satisfied that the findings made by the Family Court are sufficiently supported by the record, and we find no basis to disturb those findings on appeal. Moreover, the Family Court properly applied the law to the facts in concluding that the Mother should not have contact with the Child at the time of the custody order.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Tamika R. Montgomery-Reeves*
Justice