IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES L. MARTIN, | § | |
| | § | |
| Plaintiff Below, | § | No. 160, 2022 |
| Appellant, | § | |
| | § | Court Below–Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| DAVID H. NIXON, | § | C.A. No. N17C-08-152 |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: January 13, 2023
Decided: March 28, 2023

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

### <u>**ORDER**</u>

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The plaintiff below/appellant, James L. Martin, brought a personal-injury action against the defendant below/appellee, David H. Nixon, in the Superior Court, seeking damages for injuries that he sustained in a motor-vehicle/bicycle collision. The Superior Court bifurcated the trial into a liability phase and a damages phase. Following the September 2019 jury trial on the issue of liability, a Superior Court jury found Martin forty-three percent at fault and Nixon fifty-seven percent at fault for the accident. Following the February 2022 jury trial on the issue of

damages, the jury determined that Martin had suffered $102,709.59 in damages. Reducing the award by Martin's comparative fault, the Superior Court entered a judgment in favor of Martin for $58,544.47 in damages, plus costs. This appeal followed.

(2) On appeal, Martin's arguments may be fairly summarized as follows: (i) the Superior Court judge should have recused himself because he was biased in favor of Nixon; (ii) Nixon's trial counsel should be sanctioned for denying the existence and content of Nixon's "recorded statement" to his insurance company; (iii) Martin was entitled to present evidence of lost compensation to the jury; (iv) the question of the value of Martin's bicycle should not have been submitted to the jury; (v) and the testimony of the police officer who responded to the scene should have been excluded. Because we find no merit to Martin's contentions, we affirm the Superior Court's judgment.

(3) Martin first argues that the Superior Court judge who oversaw his trial should have recused himself because (i) he allegedly laughed when defense counsel referenced the fact that the name of one of Martin's proposed witnesses, Charles Bare, sounded like the recurring character "Dancing Bear" on the television show "Captain Kangaroo;" (ii) he engaged in *ex parte* communication with Nixon's counsel concerning the language of the verdict sheet submitted to the jury during the liability phase of the trial; (iii) he sent a letter to Nixon's counsel that outlined

2

alternatives to a jury trial to resolve the damages phase of the trial because of the indefinite suspension of jury trials in light of the COVID-19-related courthouse restrictions; and (iv) he allowed Nixon's counsel the opportunity to sur-rebut Martin's closing statement.

(4) The record reflects that Martin filed a motion to recuse and disqualify the Superior Court judge on the basis that the judge permitted Nixon's counsel to mock Martin's proffered need for an expert to testify about traffic laws as they relate to bicyclists by referring to Captain Kangaroo and then laughed along with counsel during a pretrial conference. The Superior Court judge denied the motion, noting that he did not recall counsel's purported comment and explicitly finding that he harbored no particular prejudice or bias against Martin or the merits of his case. We review a judge's decision declining to disqualify and recuse himself for abuse of discretion.[1] When the basis for disqualification is a claim that the judge has a personal bias or prejudice concerning a party, "the alleged bias or prejudice of the judge must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."[2] With the transcript of the pretrial conference in hand, we note that Martin mischaracterized counsel's comment: counsel did not mock the need for an expert

---

[1] *See Los v. Los*, 595 A.2d 381, 385 (Del. 1991).

[2] *Id.* at 384 (internal quotation marks and citations omitted).

to testify to the cycling rules of the road but merely made a passing reference to the character Mr. Bear on "Captain Kangaroo." Moreover, the transcript does not reflect that the trial judge reacted in any way to the comment. Even if the judge had laughed at the reference, however, the record does not reflect that he harbored any bias—actual or perceived—against Martin.

(5) Because Martin did not present his other claims that he alleges support the trial judge's recusal to the trial judge in the first instance, we review them for plain error. We find no plain error here. First, the phone call from someone in Nixon's counsel's office to the Superior Court judge's chambers (noting that the jury may have been confused by the use of the term "fault" on the jury verdict form when the term "negligence" had been used in the jury instructions) was not an improper *ex parte* communication.[3] Second, the trial judge's letter to counsel *on which Martin was copied* suggesting alternative means of moving ahead with the damages phase of the trial if the parties were so inclined was not evidence of bias against Martin. Third, the trial judge's decision to allow Nixon's counsel to briefly rebut Martin's testimonial closing argument during the damages phase of the trial to remind the jury that medical evidence must be testified to by a medical expert was neither

---

[3] *See Abbott v. Del. State Pub. Integrity Comm'n*, 2019 WL 937184, at *6 (Del. Feb. 25, 2019) ("Improper *ex parte* communications… involve contact with a judge on substantive matters concerning the merits of an issue pending before the court.").

impermissible[4] nor evidence of bias. Simply put, there is no merit to Martin's claim that the trial judge should have disqualified and recused himself from Martin's case.

(6) After the liability phase of the trial, Martin learned that Nixon had given a statement to his insurance company—a statement that conflicted in some respects with Nixon's trial testimony and, Martin argued, entitled him to judgment as a matter of law. The Superior Court denied the motion as an untimely and meritless motion to reargue. On appeal, Martin argues that Nixon's counsel should be sanctioned[5] for his failure to disclose Nixon's "recorded statement" to his insurance company because his failure to disclose the statement stymied Martin's ability to prosecute his case.[6] Although Martin couches his claim as one for sanctions, it is, at its core, a claim that his ability to challenge Nixon's credibility at trial was curtailed by counsel's failure to disclose Nixon's statement. This claim is belied by the record. As a preliminary matter, counsel did not misrepresent the record: although Nixon provided a brief summary of the accident to his insurance company, he did not give a *recorded* statement as Martin claims. In any event, to the extent that the statement

---

[4] *Compare* Del. Super. Ct. Civ. R. 42.1 (providing that plaintiff and defense attorneys may make an opening statement in civil jury trials and setting no parameters with regard to closing or rebuttal arguments) *with* Del. Super. Ct. Crim. R. 29.1 (providing that the prosecution must make a closing argument, to which the defendant may reply, and if he does, the prosecution may reply in rebuttal).

[5] Specifically, Martin asks the Court to order Nixon to reimburse Martin for his fees and costs, to direct that Nixon be fired from his law firm, and to strike Nixon's "work product" from the record.

[6] After Nixon acknowledged at his deposition that he had spoken to someone at his insurance company about the accident, Nixon's counsel informed Martin's counsel that the statement was not recorded.

5

could have been used to impeach Nixon, the record reflects that it would have been cumulative: at trial, Martin aggressively cross-examined Nixon about his recollection of the accident.

(7) Martin's final arguments concern the Superior Court's rulings on various motions in limine. A trial judge's decision to admit or exclude evidence is reviewed for abuse of discretion.[7] Judicial discretion "is the exercise of judgment directed by conscience and reason, and when a court has not exceeded the bounds of reason in view of the circumstances and has not so ignored recognized rules of law or practice so as to produce injustice, its legal discretion has not been abused."[8] To find an abuse of discretion, there must be a showing that the trial court acted in an arbitrary and capricious manner.[9] Here, the Superior Court did not abuse its discretion by granting Nixon's motion in limine to exclude the testimony of Martin's medical expert, Dr. Charles Getz, as it related to any treatment or assessment after December 2016 because Dr. Getz had not opined that any treatment after that date was causally related to a reasonable degree of medical certainty to the accident. Accordingly, testimony as it related to any action Dr. Getz took after December 2016 was properly excluded. This properly excluded testimony included Dr. Getz's

---

[7] *Spencer v. Wal-Mart Stores East, LP*, 930 A.2d 881, 886 (Del. 2007).

[8] *Id.* at 886-87 (citation omitted).

[9] *Id.* at 887.

6

statement that he had reviewed another doctor's handwritten notes—which included that doctor's assessment of Martin's degree of disability for the years following the accident and upon which Martin relied in part to support his claim of lost compensation—in the month before his deposition was taken in January 2022.[10]

(8) We also find that the Superior Court properly concluded that the value of Martin's bicycle was a question of fact for the jury. The fact that Martin's witness[11] signed an affidavit attesting to the value of Martin's bicycle was not dispositive of its value—especially where, as here, the bicycle model in question was no longer being manufactured at the time of the accident and the market value of the warranty attached to it was unclear. Accordingly, the question was properly submitted (along with the parties' respective witnesses and argument) to the jury. Finally, the fact that the responding police officer issued traffic citations to Martin that were later dismissed was immaterial to the relevance and admissibility of the police officer's testimony at the liability phase of the trial.

---

[10] Dr. Getz did not opine (or indicate that he intended to opine) on Martin's lost income in his opinion letters prepared in connection with Martin's case. During Martin's deposition, Martin stated that he was employed in various capacities, but he did not testify to any lost income as a result of the accident. At trial, Martin sought to introduce a self-generated document, notably not a business record, that purported to outline his lost income for the years 2015-2021, simply listing "hours lost" and "income lost." Without more (*i.e.*, tax returns), this document was not "sufficient evidence to provide a reasonable basis for the jury to estimate with a fair degree of certainty his probable loss." *Moody v. Nationwide Mut. Ins. Co.*, 549 A.2d 291, 293 (Del. 1988).

[11] Contrary to Martin's representation, the witness did not testify as an expert.

7

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice